IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CONRAD A. WEIRUP,  CV 04-797-MA

        Plaintiff,  OPINION AND ORDER

  v.

JO ANNE B. BARNHART, Commissioner
of Social Security,

        Defendant.
_____

    MARTIN L. ALVEY
    140 SW Arthur Street, Suite 100
    Portland, Oregon  97201

        Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    CRAIG J. CASEY
    Assistance United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

1 - OPINION AND ORDER

        L. JAMALA EDWARDS
        Special Assistant United States Attorney
        Social Security Administration
        701 5th Avenue, Suite 2900 M/S 901
        Seattle, WA  98104-7075

        Attorneys for Defendant

MARSH, Judge:

### **INTRODUCTION**

Plaintiff, Conrad A. Weirup (Weirup), brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability benefits under Titles II and XVI of the Social Security Act (the Act). The court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

Weirup was granted disability benefits on October 25, 1997, for disability beginning October 18, 1995, due to cervical and back problems. In October, 2001, Weirup did not respond to a request by the Social Security Administration to furnish information indicating whether he was still under a disability. As a result, Weirup's benefits were ceased in November, 2001. Weirup filed a request for reconsideration, which was denied on October 9, 2002. Following a hearing, on July 12, 2003, the ALJ determined that Weirup was no longer disabled. The Appeals Council denied his request for review, making the ALJ's July, 2003, decision final.

Weirup was 49 years old at the time of the most recent hearing decision.  He has an eleventh grade education and past relevant work as a yarder operator in the timber industry.

On appeal to this court, Weirup contends the ALJ improperly determined that Weirup has experienced medical improvement - a finding necessary to revoke disability benefits.  Weirup also contends the ALJ failed to meet his burden of showing Weirup has regained the ability to perform substantial gainful work existing in significant numbers in the national economy.

For the following reasons, the Commissioner's decision is affirmed and this case is dismissed.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42

3 - OPINION AND ORDER

U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

### A.   Continuing Disability Review

For purposes of determining if disability has ended, the claimant is entitled to a presumption of continuing disability, requiring the Commissioner to produce rebuttal evidence. Patti v. Schweiker, 669 F.2d 582, 586-87 (9th Cir. 1982). The presumption of continuing disability, however, does not affect the ultimate burden of persuasion, which remains on the claimant, to prove entitlement to disability insurance benefits. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Patti, 669 F.2d at

587. In order to meet this burden, the claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1509.

After the Commissioner determines that a person is disabled, she must evaluate the claimant's impairments "from time to time to determine if [the claimant is] still eligible for disability cash benefits." 20 C.F.R. § 404.1589. This evaluation is called a "continuing disability review" and the claimant is notified that the review could result in the termination of benefits. Id. In evaluating a disabled claimant's eligibility for benefits, the Commissioner must consider whether "there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work." 20 C.F.R. § 404.1594. In addition, the Commissioner must establish "that [the claimant is] currently able to engage in substantial gainful activity before [the agency] can find that [the claimant is] no longer disabled." Id.

When the Commissioner terminates a claimant's benefits, she must examine "all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition" and must determine whether "the individual is

now able to engage in substantial gainful activity." 42 U.S.C. § 1382c(a(4).

When an individual challenges an initial determination that his disability has ceased, subsequent Agency adjudicators, including the ALJ, consider what that individual's condition was at the time of the cessation determination. See Acquiescence Ruling (AR) 92-2(6), available at 1992 WL 425419; Johnson v. Apfel, 191 F.3d 770, 775-776 (7th Cir. 1999). In determining whether a claimant's disability persists, the ALJ will consider a claimant's condition at the time of the cessation determination, not at the time that the appeal determination is being made. Id. Furthermore, if an adjudicator finds that the cessation determination was proper, the analysis must end. Id. If the evidence in any way suggests that the claimant may have become disabled again after his disability ceased, the adjudicator will suggest filing a new application for benefits. Id.

**B.   Steps to Evaluating Continuing Disability**

The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability has ended. See 20 C.F.R. § 404.1594(f). This multi-step process for continuing disability evaluation is similar to the five step sequential evaluation process used to evaluate initial claims, with the addition of the question of whether medical improvement has occurred. Cf. 20 C.F.R § 404.1520; 20 C.F.R. § 404.1594(f).

A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. See Tackett, 180 F.3d at 1098.

Determination of whether a person's entitlement to benefits under Title XVI has ended involves an eight-step process. See 20 C.F.R. § 404.1594(f)(1)-(8). The first step addresses whether the claimant is engaging in substantial gainful activity. See 20 C.F.R. § 404.1594(f)(1).

Step two determines whether the claimant has an impairment or combination of impairments that meet or equal the severity of an impairment set forth in the Listing of Impairments (the Listings) set forth at 20 C.F.R. pt. 404, subpt. P, app. 1. See 20 C.F.R. §§ 404.1520(d), 404.1594(f)(2).

The third step addresses whether there has been medical improvement in the claimant's condition. See 20 C.F.R. § 404.1594(f)(3). Medical improvement is defined as any decrease in the severity of the impairment that was present at the time the individual was disabled or continued to be disabled. See 20 C.F.R. § 404.1594(b)(1). A determination that there has been a decrease in medical severity must be based on changes indicative of improvement in relation to symptoms, signs, or laboratory findings associated with the impairment. Id.

At step four, if there has been medical improvement, a determination must be made as to whether such improvement is related to the claimant's ability to perform work.  Medical improvement is related to the ability to work if there has been a decrease in the severity of the impairment present at the time of the most recent medical decision and an increase in the individual's functional capacity to perform basic work activities.  See 20 C.F.R. § 404.1594(b)(3), (f)(4).  If it is determined that there has been no medical improvement or that medical improvement is not related to the claimant's ability to work then, at step five, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased.  See 20 C.F.R. § 404.1594(f)(5).

If medical improvement is shown to be related to the claimant's ability to work, then a determination will be made under step six to assess whether all of the claimant's current impairments, in combination, are severe (i.e., whether they impose more than a minimal limitation on his physical or mental ability to perform basic work activities).  See 20 C.F.R. § 404.1594(f)(6).

At step seven, if the claimant's impairment is severe, the ALJ must determine whether the claimant can perform his past relevant work, either as it was performed in specific settings or

as it is ordinarily performed in the national economy. See 20 C.F.R. § 404.1594(f)(7); see also 20 C.F.R. § 404.1520(e); Social Security Ruling (SSR) 82-61, available at 1982 WL 31387.

At step eight, if the claimant cannot perform his past relevant work, the burden of production then shifts to the Commissioner to prove that there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. See 20 C.F.R. § 404.1594(f)(8). If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical improvement. If he can perform a significant number of other jobs, then disability ceases. Id.

### C. The ALJ's Findings

In the instant case, at step one, the ALJ found that Weirup had not been performing substantial gainful activity since he was found disabled on October 18, 1995.

At step two, the ALJ found that Weirup's impairments did not meet or equal the Listings.

At step three, the ALJ found significant medical improvement.

At step four, the ALJ found that Weirup's medical improvement significantly increased his functional abilities related to his ability to work.

The ALJ's findings at steps three and four made consideration of the exceptions at step five unnecessary.

At step six, the ALJ determined that Weirup had severe impairments that consisted of status post four cervical surgeries, status post lumbar surgery, hepatitis C, headaches, depression, and anxiety.

The ALJ determined that Weirup had the residual functional capacity to perform light work; would require the ability to sit and/or stand as necessary; could occasionally reach overhead, climb, stoop, crouch, kneel, or crawl; could occasionally engage in head flexion requiring downward movement; should avoid extreme cold, wetness, vibrations, and hazards; was limited to simple one to three-step work tasks; and should have only occasional interaction with the public.

At step seven, the ALJ found that Plaintiff could not perform his past relevant work.

At step eight, the ALJ adopted the testimony of a vocational expert, that Plaintiff could perform other work that exists in significant numbers in the national economy.

## DISCUSSION

### I. The ALJ properly determined that Weirup made medical improvements related to his ability to work.

The main issue in this case is whether Weirup had medically improved as of October 2, 2001, to a point where his impairments

imposed no more than a minimal limitation on his ability to perform substantial gainful work.  The ALJ found that he had.  Weirup contends this finding was in error because the ALJ didn't consider all the medical evidence, and because the medical evidence he did consider does not support the conclusion that there has been a decrease in the severity of Weirup's impairments.  Weirup also contests the ALJ's conclusion that Weirup's subjective reports are less than fully credible.

   A.   **Medical Evidence**

Medical improvement related to a claimant's ability to work is measured by comparing the severity of his impairments at the time of the decision granting him disability with his residual functional capacity (RFC) at the time benefits were discontinued- not his RFC as of the time of the hearing or reconsideration decisions.  See 20 C.F.R. § 404.1594(b)(7); AR 92-2(6).  Though the Social Security Administration is not explicit about its rationale for refusing to consider medical evidence post-dating the initial cessation date, this case illustrates the danger in not doing so:  namely, that a claimant who has experienced medical improvement after an award of benefits could reinitiate contact with his doctors upon receiving notice that his benefits were going to be revoked, in order to maintain the appearance of ongoing treatment.

11 - OPINION AND ORDER

Weirup was granted disability benefits beginning October 25, 1997, and his benefits were ceased as of October 2, 2001. I refer to this period as the period of comparison. Pursuant to AR 92-2(6), I find the ALJ properly declined to consider evidence in Weirup's file post-dating October 2, 2001. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)(reviewing courts must uphold an agency's interpretation of an ambiguous statute if it is based on a permissible construction of the statute).

Based on evidence developed during the period of comparison, the ALJ found that Weirup's level of physical functioning had significantly improved since his onset of disability. Though Weirup's pain and limitations did not cease following his surgeries, the ALJ found that "[n]umerous treating and examining physicians have opined that [Weirup] has only minimal limitations in regards to his physical and/or mental activities."

Chart notes from Oregon Health Sciences University indicate that by May, 2001, Weirup's surgeries were considered a success, and apart from some minor hip pain Weirup had no complaints, and no sensory deficits. The record also reflects that Weirup's treatment for pain and depression was successful, and by August, 2001, Weirup's depression was under control and he was involved in several outdoor activities. The increase in Weirup's

activities was of great significance to the ALJ, as discussed in detail below.

There is no dispute that despite his increased activity Weirup continued to suffer from depression, and a pain disorder, as evidenced by continued use of narcotic pain medication throughout the period of comparison. Weirup contends the ALJ failed to consider the effect pain has on his overall disability picture, as required by SSR 96-7p. However, Weirup again points to evidence beyond the points of comparison in support of this contention. Further, the ALJ found evidence in the record that Weirup was actually abusing his strong pain medication. Chart notes from Angel Medical indicate that Weirup exhibited drug-seeking behavior, evidenced by numerous attempts to obtain narcotic pain medications. In late 2001, Angel Medical recommended multi-disciplinary treatment to address Weirup's dependency on pain killers.

Further, records from Columbia Memorial Hospital, where Weirup had received treatment for headaches, neck and back pain, indicate that on September 23, 2001, Weirup was examined and then incarcerated after placing an unloaded shotgun to his head, and then evading police. Weirup denied suicidal intent, and explained that he was just trying to scare his wife.

Based on the above, the ALJ concluded that the objective medical evidence from October 25, 1997, to October 2, 2001,

13 - OPINION AND ORDER

reflected an overall decrease in Weirup's symptoms, signs and medical evidence of severe impairment.

As the Commissioner points out, the medical evidence Weirup contends the ALJ improperly failed to consider is outside the period of comparison. In fact, most of the record medical evidence post-dates October 2, 2001. As the ALJ advised, if Weirup believes that his condition may have again become disabling subsequent to the cessation of his benefits, he should file a new application for disability benefits.

**B.   Testimonial Evidence**

The ALJ also found Weirup "brought some doubt upon his credibility through his inconsistent statements and testimony." For instance, the ALJ noted that on August 28, 2001, Weirup reported to Dr. Little that he had cut down a tree with a chainsaw, but then testified at the hearing that it was his brother who did the cutting. In his brief to this court Weirup argues this was an improper reason to discredit him because the record is equivocal about who cut down the tree. I disagree. The doctor's note states "he cut a tree down and it landed on his pickup- totaling it- he claims medication had nothing to do with it and that it was expensive." There would be no reason for Weirup to comment on the role his medication may have played in the tree cutting mishap if Weirup's brother was in command of the chainsaw. This conclusion is further substantiated by a medical

record from August 18, 2001, indicating that Weirup was treated in an emergency room for a laceration on his thigh, caused by his chainsaw, and by Weirup's own admission that he used his chainsaw to trim bushes.

The ALJ also cited evidence in the medical record indicating that Weirup was upset because his family responsibilities were interfering with his hunting and fishing activities. The ALJ found Weirup's increased activity around the home, and in recreational pursuits was inconsistent with his allegation of being isolated and disabled. Weirup seeks to clarify that he testified he is unable to do anything *unless* he takes his medication. Yet, a claimant's activities of daily living during periods of medical compliance are precisely relevant in assessing his RFC, or what he can still do despite his limitations. 20 C.F.R. § 404.1545(a). Medical compliance is a prerequisite to receipt of disability benefit. 20 C.F.R. § 404.1530. Therefore, I find the ALJ properly considered Weirup's increased ability to engage in recreational and daily living activities to be inconsistent with Weirup's plain contention that his limitations have actually increased since his initial disability decision in 1997.

Finally, the ALJ found inconsistencies in Weirup's testimony about, and his use of, Viagra. Medical records indicate that in July, 2002, Robert Arnsdorf, M.D., increased Weirup's Viagra

prescription from 25 to 50 milligrams.  Then on April 17, 2003, about a month before the hearing, Dr. Arnsdorf's notes indicate he refilled Weirup's prescription following a discussion about Viagra use and effectiveness.  Yet, Weirup testified that he was essentially alone without companionship after his wife left him in December, 2001.  Contrary to Weirup's contention, I concur with the ALJ that Weirup's testimony is indicative of more than mere confusion about his medications.  Rather, it suggests Weirup is attempting to portray greater isolation and limitation than he actually experiences.

All told, Weirup's activities of daily living during the period of comparison included: walking up to a mile a day; tending to his rose garden; doing laundry, dishes and vacuuming; fishing and hunting; watching television, listening to music, and reading the newspaper and magazines; visiting with friends and family on a daily basis; driving a car; and using his chainsaw, at least occasionally.

While a disability claimant will not be penalized for attempting to lead a normal life in spite of his limitations, where a claimant's level of activity is inconsistent with his alleged degree of disability, those activities will have a bearing on his credibility.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); see also Cohen v. Secretary of Dept. of Health & Human Servs., 964 F.2d 524 at 530-31 (6th Cir.

1992)(ruling that a claimant should not be penalized for attempting to maintain some sense of normalcy in her life); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)(noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)("Many home activities are not easily transferable to...the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

In this case, I find that the ALJ reasonably concluded that Weirup's activity level was inconsistent with the degree of disability he alleged. Accordingly, the ALJ properly considered Weirup's lack of credibility in finding that he had medically improved relative to his ability to work.

## II. The ALJ's step eight finding was supported by substantial evidence.

At step eight, if the claimant cannot perform his past relevant work, the burden of production shifts to the Commissioner to prove that there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. See 20 C.F.R. § 404.1594(f)(8). One way the Commissioner may meet this burden is by eliciting the testimony of a vocational expert (VE). See Tackett, 180 F.3d at 1099.

In this case, the ALJ adopted the testimony of a VE who identified three occupations Weirup remained capable of performing: photo finisher, laundry folder, and research worker. As a result, the ALJ found Weirup to have regained the RFC to make an adjustment to other work existing in significant numbers in the national economy.

Weirup alleges the ALJ failed to properly assess his RFC by failing "to take into account obvious physical limitations." Weirup points out that the most current RFC assessment "was done by a non-treating, non-examining physician and was done before two of the most recent surgeries." The surgeries Weirup refers to occurred after October 2, 2001, and thus beyond the point of comparison. See 20 C.F.R. § 404.1594(b)(7); see also Acquiescence Ruling 92-2(6). Therefore, the ALJ properly did not consider limitations associated with these surgeries, or any other evidence of exacerbation of Weirup's limitations after October 2, 2001.

Further, the ALJ found Weirup's other allegedly disabling impairments either were not supported by the record, or posed no work-related limitations. For example, Weirup testified that he has debilitating headaches two or three times a week, which require him to lay in a dark room. The ALJ found, however, that medical records from Columbia Memorial Hospital, where Weirup had previously been treated for headaches, concluded that there was

no medically determinable reason for Weirup to be experiencing the headaches he reported. Since the ALJ discredited Weirup's subjective reports- a finding Weirup does not dispute- the ALJ reasonably omitted this limitation from his hypothetical question as it was not substantiated by objective findings. <u>Magallanes v. Bowen</u>, 881 F2d 747, 756-57 (9th Cir 1989); 20 C.F.R. § 404.1508.

Accordingly, I find the ALJ's hypothetical question was sufficient, as was his determination that as of October 2, 2001, Weirup was no longer disabled within the meaning of the Act.

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 19_ day of April, 2005.

                                            /s/   Malcolm F. Marsh
                                            Malcolm F. Marsh
                                            United States District Court Judge